IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISIONS

| | |
|---|---|
| ANDRE C., § | |
|     PLAINTIFF, § | |
| § | |
| V. § | CASE NO. 3:19-CV-155-S-BK |
| § | |
| COMMISSIONER OF THE SOCIAL § | |
| SECURITY ADMINISTRATION, § | |
|     DEFENDANT. § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636 and *Special Order 3*, the Court now considers for a recommendation disposition the parties' cross-motions for summary judgment. Doc. 17; Doc. 18. For the reasons that follow, Plaintiff's *Motion for Summary Judgment* should be **DENIED**, Defendant's *Motion for Summary Judgment* should be **GRANTED**, and the Commissioner's decision should be **AFFIRMED**.

**I.   BACKGROUND**

    *A.   Procedural History*

Plaintiff seeks judicial review of a final decision of the Commissioner denying his claim for a period of disability and disability insurance benefits under Title II of the Social Security Act ("Act"). Plaintiff applied for benefits in July 2015, alleging that he had been disabled since January 2013. Doc. 13-1 at 175-181. Plaintiff's claim was denied at all administrative levels, and he now appeals to this Court pursuant to 42 U.S.C. § 405(g).

### B. Factual Background

Plaintiff was 49 years old at the time of the hearing before the administrative law judge ("ALJ"). Doc. 13-1 at 42. He had a high school education, was a United States Navy servicemember for 12 years, and had no other past relevant work experience. Doc. 13-1 at 44.

In terms of his relevant medical history, in 2013, Plaintiff was diagnosed with (1) mild bilateral carpal tunnel syndrome ("CTS"); (2) degenerative joint disease ("DJD") of the wrist; and (3) migraine headaches, all of which were service connected. Doc. 13-1 at 300-03. Although Plaintiff exhibited headache as well as reduced wrist extension, grip, and pinch strength, it was noted at the time of diagnosis that none of his conditions impacted his ability to work. Doc. 13-1 at 302, 308. Plaintiff stated that his pain was manageable and there is no indication that he was ever prescribed any pain medication. Doc. 13-1 at 310. Plaintiff reported in September 2015 that he was independent in all activities of daily living, although he claimed during a consultative examination that same month that his pain was "overwhelming." Doc. 13-1 at 418, 523. Generally, however, he described his headache as a four on a ten-point scale. *See, e.g.*, Doc. 13-1 at 680, 846.

In September 2015, Plaintiff reported to examining psychologist, Dr. Ieshea Jarmon, Psy.D., that he could manage his finances, and he appeared to be able to complete simple, routine tasks, was fully oriented, had no difficulties communicating, and had normal thought content and processes, as well as fair remote memory, judgment, insight, and concentration. Doc. 13-1 at 523-525. Plaintiff could count by 5's to 100, recite the alphabet, and complete simple mental arithmetic problems. Doc. 13-1 at 525. Dr. Jarmon concluded that Plaintiff could understand, carry out, and remember one to two-step instructions. Doc. 13-1 at 526.

*C. The ALJ's Findings*

In January 2018, the ALJ found that Plaintiff has the severe impairments of posttraumatic stress disorder, psychotic disorder, depression, anxiety, degenerative disc disease, DJD, CTS, sleep apnea, and obesity. Doc. 13-1 at 18. The ALJ next found that Plaintiff does not have an impairment or combination thereof which meets or medically equals a listed impairment. Doc. 13-1 at 19. Because a vocational expert ("VE") was unable to classify Plaintiff's military service in vocational terms, Doc. 13-1 at 62, the ALJ determined that Plaintiff had no past relevant work, Doc. 13-1 at 31. The ALJ then found that Plaintiff retains the residual functional capacity ("RFC") to perform a restricted range of light work and is limited to simple, unskilled jobs. Doc. 13-1 at 22. Based on the VE's testimony, the ALJ concluded that Plaintiff can perform the jobs of mail clerk, marker, and garment sorter and, thus, is not disabled. Doc. 13-1 at 32-33.

## II.     APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing his past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and RFC must be considered to determine if any

other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curiam) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* If the claimant satisfies his burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Grid Rules, vocational expert testimony, or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

In considering the parties' summary judgment arguments, the Court has relied upon their assessment of and citation to the evidence of record. The Court is not under any obligation to probe the record to find supporting evidence for one side or the other. *See* FED. R. CIV. P. 56 (the movant and opponent of a motion for summary judgment must support their positions by "citing

to particular parts of materials in the record"); *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006).

## III. ANALYSIS

### A. *Stone* Error

Plaintiff first argues that the ALJ reversibly erred when he misstated the "severity" standard set forth in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), found Plaintiff's CTS and DJD to be "severe," but failed to include any of the associated limitations in Plaintiff's RFC assessment. Doc. 17 at 5-6.

Defendant responds that because the ALJ proceeded past the second step of the sequential analysis and considered Plaintiff's CTS impairments in assessing Plaintiff's RFC, it is irrelevant that the ALJ applied the incorrect severity standard. Doc. 18-1 at 3, 5. Defendant further contends that Plaintiff's medical records reflect that his condition did not impact his ability to work. Doc. 18-1 at 4.

Without doubt, the ALJ applied the incorrect *Stone* standard in defining the term "severe" impairment or combination thereof as one that:

> *significantly limits* an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that *would have no more than a minimal effect* on an individual's ability to work.

Doc. 13-1 at 16 (emphasis added); *cf. Stone*, 752 F.2d at 1101 (holding that "an impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it *would not be expected to interfere* with the individual's ability to work, irrespective of age, education or work experience.") (alterations omitted) (emphasis added); *cf. James E. v. Saul*, 3:18-CV-1021-N-BK, 2019 WL 4648574, at *4 (N.D. Tex. Aug. 29, 2019)

(holding impermissible under *Stone* an ALJ's statements that an impairment or combination thereof is "severe if [1] "it significantly limits an individual's ability to perform basic work activities" and [2] medical and other evidence establish only a slight abnormality or combination thereof that "would have no more than a minimal effect on an individual's ability to work") (citation omitted), *adopted by* 2019 WL 4643743 (N.D. Tex. Sept. 24, 2019) (Godbey, J.).

As Defendant posits, however, any *Stone* error is harmless because the ALJ considered Plaintiff's CTS-related symptoms at length in formulating his RFC and limited his lifting capacity as a result. *See Jones v. Astrue*, 851 F.Supp.2d 1010, 1018 (N.D. Tex. 2012) (holding that the ALJ's failure to apply the correct severity standard was harmless error where the ALJ continued past the second step of the sequential analysis before concluding that the claimant was not disabled). Further, Plaintiff's own medical records reflect that his CTS was mild, and his reduced wrist, grip, and pinch strength did not affect his ability to work. Doc. 13-1 at 308; *see Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012) (holding that *Stone* error was harmless where it did not affect claimant's substantial rights).

### B. Migraine Headaches

Plaintiff next urges that the ALJ erred in not finding that his migraine headaches are severe. Doc. 17 at 7. The Court disagrees.

As noted above, an impairment is not severe if it is only a slight abnormality that has such a minimal effect on an individual that it "would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Stone*, 752 F.2d at 1101. As with Plaintiff's CTS and associated symptoms, his medical records indicate that his migraine headaches did not affect his ability to work. Doc. 13-1 at 302. Indeed, as Defendant points out, Plaintiff was never prescribed any medication for his headaches, Doc. 18-1 at 5, and

during his doctors' visits, he generally described his headache pain as around a four on a ten-point scale, *see* Doc. 13-1 at 310; Doc. 13-1 at 680, 846. Plaintiff's reports of his own activities also suggest that his migraines are not severe within the meaning of *Stone*. He performed some household chores, used a computer, travelled internationally, attended group exercise classes, drove, cooked, grocery shopped, and mowed his yard. Doc. 13-1 at 50, 53-55, 57, 59; Doc 13-1 at 823, 827. Any difficulty he encountered in performing those activities he attributed to fatigue, not pain. Doc 13-1 at 53.

### C. Step 5 Finding

Finally, Plaintiff asserts that the ALJ's finding that he could perform the jobs the VE identified is not supported by substantial evidence because his ability to follow only one or two-step instructions is inconsistent with those jobs. Doc. 17 at 9-13. Plaintiff maintains that the ALJ also erred by not asking the VE if his testimony was consistent with the requirements of the Dictionary of Occupational Titles ("DOT") or separately assessing whether there was any inconsistency with respect to the jobs the VE found Plaintiff could perform. Doc. 17 at 13-15.

Defendant responds that the ALJ's limitation of Plaintiff to simple, repetitive tasks is not inconsistent with a claimant's (1) ability to perform one to two-step tasks; (2) moderate limitations in concentration, persistence, or pace; or (3) ability to perform jobs involving DOT reasoning levels ("RL") of 2 or 3. Doc. 18-1 at 6-9 (collecting cases). As a result, Defendant maintains, there are no discrepancies between the VE's testimony and the DOT's requirements for the jobs at issue. Doc. 18-1 at 9-10.

At step 5 of the sequential analysis, an ALJ may take testimony from a VE and review the DOT to determine when a claimant can perform alternative, available work. 20 C.F.R. §§ 404.1566(d), (e). Conflicts between the two sources arise on occasion. When a direct and

obvious conflict exists and the ALJ fails to explain or resolve it, the probative value of the VE's testimony is so lessened that a reversal and remand for lack of substantial evidence may be required. *Carey v. Apfel*, 230 F.3d 131, 147 (5th Cir. 2000). If, however, the conflict is implied or indirect and the VE's testimony went unchallenged at the administrative hearing, the ALJ may rely on the testimony if the record reflects an adequate basis for doing so. *Id*. at 146.

     In this case, the DOT describes two of the jobs identified by the VE – marker and garment sorter – as requiring an RL of 2, while the mail clerk job requires an RL of 3. Doc. 17-1 at 2, 4, 7. District courts in Texas have repeatedly found there to be no inconsistency between (1) an RFC limiting a plaintiff to simple jobs or one to two-step instructions and (2) a claimant's ability to work at an RL of 2 or 3. *See Gott v. Comm'n of Soc. Sec. Admin*., No. 4:14-cv-00190, 2015 WL 5093360, at *4 (E.D. Tex. August 28, 2015) (holding that a claimant's ability to follow only simple one to two-step instructions did not preclude him from performing RL 2 or 3 jobs in a simple, routine work environment), *adopted by* 2015 WL 5837564 (E.D. Tex. Sep. 30, 2015); *Smith v. Colvin*, No. 3:13-cv-1884-N-BN, 2014 WL 1407437, at *5-6 (N.D. Tex. Mar. 24, 2014) (holding that unskilled work at an RL of 2 was not inconsistent with ALJ's finding that claimant was limited to "simple, routine, repetitive tasks that require only simple decision making"), *adopted by* 2014 WL 1407440 (N.D. Tex. Apr. 11, 2014) (Godbey, J.); *Caronia v. Colvin*, No. 4:12-CV-595-Y, 2013 WL 5192904, at *6 (N.D. Tex. Sept. 13, 2013) (Means, J.) ("The DOT's Case definition of level 3 reasoning development does not, on its face, indicate that jobs with a reasoning development level of 3 involve more than simple, repetitive work.") (citation omitted); *Gaige v. Astrue*, No. 4:12-CV-008-A, 2013 WL 1291754, at *14 (N.D. Tex. Mar. 1, 2013) (finding that the DOT's classification of jobs as "unskilled" indicates that they are, by definition, "simple."), *adopted by* 2013 WL 1286289 (N.D. Tex. Mar. 29, 2013) (McBryde, J.); *Dugas v.*

8

*Astrue*, No. 1:07CV605, 2009 WL 1780121, at *6 (E.D. Tex. June 22, 2009) ("A limitation of performing 1-2 step instructions in a simple, routine work environment does not necessarily preclude the ability to perform jobs with reasoning levels of 2 or 3.") (internal citations omitted).

The hypothetical the ALJ posed to the VE limited Plaintiff to, *inter alia*, "simple, repetitive tasks" and "simple, unskilled work." Doc. 13-1 at 63. The VE concluded that, given Plaintiff's various limitations, he could work as a marker, garment sorter, and mail clerk. Doc. 13-1 at 63. Plaintiff did not cross-examine the VE during the administrative hearing. And given the law cited above, there is no obvious conflict between the VE's testimony and the DOT's requirements for the jobs listed. *See Gaspard v. Soc. Sec. Admin.*, 609 F.Supp.2d 607, 617 (E.D. Tex. 2009) (finding that a claimant's limitation to "simple one or two-step tasks on a repetitive basis" does not directly conflict with "jobs requiring reasoning level 2 or higher"); *Longoria v. Colvin*, No. 3:13-CV-1690-B-BK, 2014 WL 2777473, at *8 (N.D. Tex. May 21, 2014) (holding that a limitation to "simple job tasks" does not directly conflict with the DOT's RL 3 job definition), *adopted by* 2014 WL 2777375 (N.D. Tex. June 18, 2014) (Boyle, J.). Accordingly, substantial evidence supports the ALJ's step 5 finding, and reversal is not warranted. *Carey*, 230 F.3d at 146.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's *Motion for Summary Judgment*, Doc. 17, should be **DENIED**, Defendant's *Motion for Summary Judgment*, Doc. 18, should be **GRANTED**, and the Commissioner's decision should be **AFFIRMED**.

**SO RECOMMENDED** on February 20, 2020.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

9

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(B). An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See* Douglass v. United Serv. Automobile Ass'n, 79 F.3d 1415, 1417 (5th Cir. 1996).